

**NUMBER 13-08-00225-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JAYSON (JASON) MARTINEZ,                                  **Appellant,**

**v.**

THE STATE OF TEXAS,                                         **Appellee.**

**On appeal from the 107th District Court of Cameron County, Texas.**

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Garza

On April 7, 2008, appellant, Jayson (Jason) Martinez, was convicted of: (1) intentionally or knowingly causing serious injury to a child, a first degree felony; (2) recklessly causing injury to a child, a state jail felony; and (3) aggravated assault with a deadly weapon, a second degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(1), (b) (Vernon Supp. 2008), § 22.04(a)(1), (3), (e), (f) (Vernon Supp. 2008). Martinez was sentenced to ten years' imprisonment for the first degree felony, one year's imprisonment for the state jail felony, and ten years' imprisonment for the second degree felony, with the sentences to run concurrently. *See id.* §§ 12.32-.35 (Vernon Supp. 2008) (setting forth felony sentencing ranges). On appeal, Martinez contends by four issues that: (1) the

evidence was legally insufficient to support his conviction for recklessly causing injury to a child; (2) the evidence was factually insufficient to support his conviction for aggravated assault with a deadly weapon; (3) the trial court erred by severing his case from that of four co-defendants; and (4) the trial court erred by disallowing certain testimony by Martinez. We affirm.

## I. BACKGROUND

Martinez, along with co-defendants Mayra Alejandra Luna, Omar Maldonado, Joshua John Frost, and Francisco De Leon III, were indicted by a Cameron County grand jury on August 22, 2007.[1] The allegations contained in the indictment arose from an incident that occurred on June 7, 2007. On October 29, 2007, the trial court granted the State's motion to sever Martinez's case from that of the other co-defendants. The guilt phase of Martinez's trial commenced on March 18, 2008.

The evidence was undisputed that on June 7, 2007, a white pickup truck approached a blue Chevrolet Monte Carlo at the corner of F Street and Buchanan Street in Harlingen, Texas. Norma Martinez ("Norma") was driving the Monte Carlo, and Jesse Garcia was seated in the front passenger seat. Riding as passengers in the rear seat were Norma's daughter Maria Martinez Cortez ("Maria"), Maria's ten-month-old daughter A.T., Maria's two-year-old daughter A.O., and Maria's future husband Ezzie Cortez. The white pickup truck contained Martinez, Luna, Maldonado, Frost, De Leon, and Tuwana Clay.

As the truck pulled up alongside the car, an altercation arose between Clay and one of the occupants of the Monte Carlo. Maria testified at trial that Clay shouted "'[g]et off [sic] the car, bitch,'" and "'[s]top the car. Get off [sic] the car.'" The truck passed the car, made

---

[1] The indictment alleged six counts against all five defendants: (1) intentionally or knowingly causing serious bodily injury to A.T., a child, *see* TEX. PENAL CODE ANN. § 22.04(a)(1) (Vernon Supp. 2008); (2) intentionally or knowingly causing bodily injury to A.O., a child, *see id.* § 22.04(a)(3); (3) aggravated assault with a deadly weapon as to Maria Martinez Cortez, *see id.* § 22.02(a)(2) (Vernon Supp. 2008); (4) aggravated assault with a deadly weapon as to Jesse Garcia, *see id.*; (5) endangering a child by "throwing stones, bricks, or pieces of concrete at or through the window of the automobile occupied by [A.T.] and [A.O.]," *see id.* § 22.041(c) (Vernon Supp. 2008); and (6) endangering a child by "initiating or participating in gang-related criminal actions or violence . . . that either directly through violence itself, or through retaliation for previous criminal acts, brought injury to [A.T.], [A.O.], or Jesse Garcia," *see id.*

a U-turn, and then approached the Monte Carlo from behind. At that point, according to Maria, "[w]e saw the gentleman in the back [of the truck] start throwing bricks at my car. . . . We just saw a lot of guys get out from the back of the pickup truck and start throwing bricks from the truck." Maria stated that she recognized Martinez and De Leon as among the people riding in the truck. Maria stated that Garcia, who was in the front passenger seat of the Monte Carlo, then got out of the car and "started yelling that the babies were in the car," at which point he was struck on his hand by a brick. Maria testified that Martinez then "[r]an up to my car" and "[w]ith his hand, he started breaking my side window." Next, according to Maria, Martinez "look[ed] inside my car" and "picked up a brick and went to the back of my car and threw it in." Maria stated that the brick "glazed [sic] me on my . . . right side. . . . I got down and it hit my daughter [A.T.] in the back of the head." Maria further stated that a second brick was thrown into the car through the back window that struck Cortez on his back and A.O. on her foot. She stated that the only people behind the car at the time were Martinez and De Leon. Maria testified that A.T. suffered a fractured skull and was taken to Valley Baptist Medical Center where she underwent surgery to repair her head injuries.

Both Cortez and Norma corroborated Maria's testimony. Cortez noted that the passengers of the truck "[s]tarted throwing, I guess, pieces of concrete" at the Monte Carlo and that Martinez then approached the car and "[s]tarted hitting the side window." Cortez then observed Martinez throw a brick through the back window, and noted that it struck A.T. Cortez stated that a second rock came through the back window but that it did not hit anyone.

Norma, Maria's mother, testified that Luna was driving the truck and that she heard Clay yell at someone in the Monte Carlo. Norma stated that Martinez approached the car, started hitting the passenger side window with his hand, and then "threw a rock" through the rear window. When asked if anyone was hit by the first rock thrown by Martinez, Norma responded: "My daughter [Maria] got a little bit like scratched, but it went straight

3

to [A.T.]'s head." Norma also noted that she observed De Leon throw the second brick which struck Cortez in the back.

Testifying on his own behalf, Martinez stated that he did not know that there were children in the Monte Carlo. Martinez admitted that he "tried to throw" a "big rock" at the car but stated that "it was so heavy that it just landed in the front of the truck." Martinez placed the blame for the children's injuries on his companions in the truck—specifically Tuwana Clay—as evidenced by the following exchange on direct examination:

Q. These rocks that were thrown that we have here in evidence, two of which were inside their—the vehicle that these little kids were in, was it the intention of—to your knowledge, of the people that you were with to throw rocks at these little kids?

A. My knowledge, I'm pretty sure they were reckless. They were just careless, and they were probably trying to hurt Maria, the girls. That's what I—that's my speculations [sic]. I mean, nobody else had problems with nobody in that vehicle, just—I just wanted to talk to Jesse when I saw him. I didn't know he was in the vehicle until he got out. So if anybody—

Q. Tuwana had problems with Maria, right?

A. Yes, sir.

The jury found Martinez guilty of intentionally or knowingly causing serious injury to A.T., recklessly causing injury to A.O., and aggravated assault with a deadly weapon as to Maria.[2] *See id.* §§ 22.02(a)(2), 22.04(a)(1), (a)(3). The jury then imposed sentences of ten, one, and ten years' imprisonment, respectively, and the trial court ordered the sentences to run concurrently. This appeal followed.

## II. Discussion

## A. Legal Sufficiency—Reckless Injury to a Child

By his first issue, Martinez contends that the evidence adduced at trial was legally

---

[2] Before the jury rendered its verdicts on Counts I, II and III of the indictment, the trial court granted Martinez's motion for directed verdict on Counts IV (aggravated assault with a deadly weapon as to Garcia) and V (endangering a child by "throwing stones, bricks, or pieces of concrete at or through the window of the automobile occupied by [A.T.] and [A.O.]"). Further, because the State abandoned Count VI of the indictment (endangering a child by "initiating or participating in gang-related criminal actions"), the trial court dismissed that count.

4

insufficient to support his conviction for recklessly causing injury to A.O. In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, Martinez committed the offense of recklessly causing injury to a child if he (1) recklessly (2) caused bodily injury (3) to a child 14 years of age or younger. *See* TEX. PENAL CODE ANN. § 22.04(a)(3), (c)(1). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (Vernon Supp. 2008).

Martinez's sole argument in his first issue is that the evidence was legally insufficient to establish that A.O. suffered any "bodily injury."[3] In support of this argument, Martinez points to Cortez's testimony that the second rock thrown into the Monte Carlo did not hit anyone. However, Maria testified that the second rock "hit [A.O.'s] foot" and that, as a result, A.O. "had a couple of scratches." The State also notes that A.T.'s hospital records,

---

[3] By his first issue on appeal, Martinez does not dispute the sufficiency of the evidence as to his state of mind or as to A.O.'s age.

which were received into evidence without objection by defense counsel, contained a statement by A.T.'s treating physician that "the other sister [A.O.] was injured" by some of the pieces of rock. *See* TEX. R. EVID. 902(10)(a) (providing for the self-authentication of business records accompanied by an affidavit). The jury may have inferred from these pieces of evidence that A.O. suffered physical pain, and therefore, bodily injury. *See Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.–Corpus Christi 1988, pet. ref'd) ("The fact of a physical intrusion on the body in the form of a cut or scrape can itself be sufficient evidence of the associated physical pain necessary to show 'bodily injury.'") (citing *Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981)).

Although Maria's testimony and the medical records conflict with Cortez's statement that the second rock thrown into the car did not hit anyone, we must defer to the jury's resolution of the conflict in favor of the prosecution. *See Turro*, 867 S.W.2d at 47. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that A.O. suffered a "bodily injury." *Sanders*, 119 S.W.3d at 820. Martinez's first issue is overruled.

**B.     Factual Sufficiency—Aggravated Assault**

By his second issue, Martinez argues that the evidence adduced at trial was factually insufficient to support his conviction for the aggravated assault of Maria. In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The verdict is to be set aside only if: (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust; or (2) it is against the great weight and preponderance of the evidence. *Id.* at 415 (citing *Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim. App. 2000)). To reverse a verdict for factually insufficient evidence, we must "explain in exactly what way the State's evidence, while legally sufficient, is nevertheless too weak to withstand scrutiny, or in exactly what way we perceive the conflicting evidence greatly to preponderate against conviction." *Id.* at 414.

Factual sufficiency, like legal sufficiency, is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik*, 953 S.W.2d at 240; *Adi*, 94 S.W.3d at 131. Under a hypothetically correct jury charge, Martinez committed the offense of aggravated assault with a deadly weapon if he (1) intentionally, knowingly, or recklessly, (2) caused bodily injury to another, and (3) used or exhibited a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), § 22.02(a)(2).

Martinez specifically contends by his second issue that the evidence was factually insufficient because "the State did not delve into what the meaning of graze and scrape mean in relation to bodily injury."[4] Martinez refers here to Maria's testimony that a rock thrown by Martinez "glazed [sic] me on my . . . right side" and her later statement that the rock "just barely—it barely scraped me. I just had like a little bruise." Martinez does not point to any conflicting evidence which would indicate that Maria did not suffer bodily injury. Rather, he argues that the words "graze" and "scrape" are ambiguous and that "[i]t was incumbent on the [S]tate to clarify [Maria's] words and hone in on the elements in the charge." We disagree that Maria's words required any clarification. The Texas Court of Criminal Appeals has noted that the statutory definition of bodily injury "appears to be purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989). Here, Maria testified that she was "glazed [sic]" or "scraped" by the projectile thrown by Martinez, and Norma testified that Maria was "a little bit like scratched" by the rock. Viewing the evidence in a neutral light, this testimony is probative of the physical contact necessary to show "bodily injury." *See Goodin*, 750 S.W.2d at 859 (citing *Bolton*, 619 S.W.2d at 167).

Without any conflicting evidence, we cannot say that the jury's verdict on this count was clearly wrong, manifestly unjust, or against the great weight and preponderance of the

---

[4] By his second issue on appeal, Martinez does not dispute the sufficiency of the evidence as to his state of mind or as to whether he used or exhibited a deadly weapon.

evidence. *See Watson*, 204 S.W.3d at 415. Accordingly, we conclude that the evidence was factually sufficient to support Martinez's conviction of aggravated assault as to Maria. Martinez's second issue is overruled.

## C.      Propriety of Severance

By his third issue, Martinez contends that the trial court erred by granting the State's motion to sever because the State "does not have standing to ask for a severance to protect the rights of co-defendants."

Article 36.09 of the Texas Code of Criminal Procedure provides in relevant part that "[t]wo or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants." TEX. CODE CRIM. PROC. ANN. art. 36.09 (Vernon 2007). However, the court must order a severance "in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant." *Id.*

Here, the State filed a motion to sever Martinez's case from those of his co-defendants on October 23, 2007. The motion noted that: (1) Martinez's record showed that he had a prior felony conviction; (2) Maldonado and De Leon did not have prior felony convictions; (3) a joint trial would therefore be "prejudicial" to Maldonado and De Leon; and (4) Martinez's counsel informed the court that he did not oppose the severance.

Martinez does not dispute any of the facts alleged in the State's motion to sever. Instead, he baldly asserts that "granting [a motion to sever] when the State asks for it, and not the defendant, is an abuse of discretion because the law requires that it only be asserted by a defendant." However, Martinez does not provide any authority, and we can find none, supporting this position. Indeed, the plain language of article 36.09 states that it is generally within the discretion of the trial court to grant or deny a motion to sever. *See id.* According to the statute, the only situation where the court loses that discretion is when

8

a defendant timely files a motion to sever, introduces evidence thereon, and the trial court finds that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant—in such cases the court must grant the motion to sever. *See id.* There is no provision in the statute, though, forbidding the trial court from granting a motion to sever simply because the motion was originally filed by the State.

We therefore conclude that the trial court did not err by granting the State's motion to sever. Accordingly, Martinez's third issue is overruled.[5]

## D. Disallowance of Testimony

By his fourth issue, Martinez asserts that the trial court erred by disallowing certain testimony. Prior to Martinez's direct examination at trial, his trial counsel asked the trial court for permission to inquire into "the reason for the bad blood between [Martinez] and [Garcia]." The following exchange took place:

| THE COURT: | All right. Bring in the jury. |
|---|---|
| [State's attorney]: | Your Honor, before they do that, I want to go ahead and just remind defense counsel concerning our motion in limine about referencing or talking about any prior bad acts or any other extraneous offenses. |
| THE COURT: | Of the defendant? |
| [State's attorney]: | Of the defendant and his interaction with either relatives of some of the victims here or with the victims themselves. |
| THE COURT: | Okay. What do you mean interaction? That's something else. |

---

[5] In the portion of his appellate brief addressing his third issue, Martinez alludes to a "problem" involving the order of trial, suggesting that "the [S]tate determined the order of trial" in the instant case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.10 (Vernon 2007) ("If a severance is granted, the defendants may agree upon the order in which they are to be tried, but if they fail to agree, the court shall direct the order of the trial."). Martinez does not argue that he and the other defendants agreed upon the order of trial; instead, Martinez suggests that he "was harmed per se because he was not allowed to set up his story against his alleged fellow assailants, whom the [S]tate appeared to exonerate at trial." The State argues that Martinez failed to preserve this issue because Martinez's trial counsel made no objection when the trial court announced Martinez's case first. *See* TEX. R. APP. P. 33.1(a). Even if the issue were properly preserved, we note that Martinez has directed us to no authority indicating that a trial court commits reversible error by setting the order of trial in the absence of any agreement among the defendants. The issue is therefore waived. *See* TEX. R. APP. P. 38.1(i).

9

| | |
|---|---|
| [State's attorney]: | Well, there are other—the bad, the other stuff, the interaction consider—or is about prior bad acts. Apparently, there's been other arguments, fighting. . . . |
| [Martinez's attorney]: | I have no intention of bringing up anything bad about my own client, Judge. The only thing I'm going to bring out the fact is that why he was after this guy Jesse Garcia. And that was because Jesse Garcia was involved in a stabbing of a close personal friend of his, like a brother, a couple of days earlier; and he wanted to ask him about whether or not that was. . . . |
| THE COURT: | Okay. That had something to do with this incident? |
| [Martinez's attorney]: | Yes. Well, no. The stabbing didn't. It happened a couple of days before. A shooting. |
| THE COURT: | Okay. |
| [Martinez's attorney]: | But that was the reason for Jayson Martinez to approach this guy Jesse Garcia. |
| [State's attorney]: | Once again, Your Honor, he's talking about prior bad acts. |
| [Martinez's attorney]: | Well, not bad act of my client. . . . |
| THE COURT: | Okay. Well, I'll sustain the [S]tate's objection to bringing that out. You can go ahead and elicit testimony about chasing . . . Jesse Garcia and confronting him just to ask him about something, but don't go into the specifics of what that is. |
| [Martinez's attorney]: | All right. Just so that I'm clear, do I say that—can Jayson Martinez ask him about the shooting of the friend? |
| THE COURT: | No. I'll sustain that part of the objection. |

Martinez alleges that, by sustaining the State's objection, the trial court deprived him of his constitutional due process right to present a defense. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 10. Martinez explains on appeal that "[t]his defense took the form of explaining that both [Martinez] and Jesse [Garcia] were no where [sic] near the vehicles when the rocks were thrown which caused the harm."

Generally, we review a trial court's decision to admit or exclude evidence under an

abuse of discretion standard. *See McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). However, we need not do so here because Martinez failed to preserve the issue for our review. Texas Rule of Evidence 103(a)(2) provides that an error may not be predicated upon a ruling which excludes evidence unless: (1) a substantial right of a party is affected; and (2) the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which questions were asked. TEX. R. EVID. 103(a)(2); *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). Here, although Martinez's counsel explained to the trial court that Martinez could testify as to an alleged prior stabbing or shooting by Garcia, there was no offer of proof made as to Martinez's testimony regarding his or Garcia's positions during the incident in question. Because the substance of the evidence sought to be admitted was not made known to the trial court, and was not apparent from the context, Martinez has failed to preserve the issue for appellate review. *See* TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1(a). His fourth issue is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 25th day of June, 2009.

11